IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| SHOULDERTAP TECHNOLOGIES, INC. D/B/A FIZZ,<br><br>              Plaintiff,<br><br>    v.<br><br>FIZZ SOCIAL CORP.,<br><br>              Defendant. | Civil Action No.: _____<br><br>**JURY TRIAL DEMANDED** |

**PLAINTIFF'S COMPLAINT FOR TRADEMARK INFRINGEMENT
AND UNFAIR COMPETITION**

Plaintiff, ShoulderTap Technologies, Inc. d/b/a Fizz ("Plaintiff" or "Fizz"), by its undersigned counsel, brings this action for trademark infringement and unfair competition against Defendant, Fizz Social Corp. ("Defendant" or "FSC"), by filing this complaint and alleges as follows:

**PARTIES**

1. Plaintiff, Fizz, is a Delaware corporation with its principal place of business at 18470 W. 10 Mile Road, Southfield, Michigan 48075.

2. Defendant, FSC, is a Delaware corporation with its principal place of business at 1551 College Ave., Palo Alto, California, 94306.

**JURISDICTION AND VENUE**

3. This Court has personal jurisdiction over Defendant because Defendant carries on a continuous and systematic part of its general business within the Commonwealth of Pennsylvania, and is therefore subject to personal jurisdiction within Pennsylvania pursuant to 42

Pa. Con. Stat. § 5301(a)(2)(iii). Additionally, this Court has personal jurisdiction over Defendant because Defendant has purposefully targeted its unlawful business activities to residents of this district and availed itself of the privilege of carrying out business within the Commonwealth of Pennsylvania, and the claims and damages associated with this action arise from such activities. For example, Defendant directly promotes, offers for sale, and sells infringing services, and falsely advertises such services in Pennsylvania, such that it expected or should reasonably have expected its acts to have consequences in Pennsylvania.

4. This action arises under federal law, in particular, under Section 43(a) of the Lanham Act, 15 U.S.C. §1125(a). As such, this Court has subject matter jurisdiction over this action pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331 (federal question) and 1338 (trademark and unfair competition cases).

5. This action also arises under the common law of Pennsylvania. Pursuant to 28 U.S.C. § 1367, this Court has supplemental jurisdiction over the state law claims because they arise from, or form part of, the same case or controversy as the federal Lanham Act claims.

6. Venue is proper in this judicial district because a substantial part of the events or omissions giving rise to the claim occurred in the Eastern District of Pennsylvania. Defendant has achieved direct sales of its social media services under the infringing mark to customers residing in this district, at universities and colleges located in this district, and continues to offer such services in this district, such that venue is appropriate pursuant to 28 U.S.C. § 1391(b)(2).

## BACKGROUND

## PLAINTIFF'S ADOPTION AND USE OF FIZZ

7. Fizz was founded in 2021 with the mission of empowering young adults to become financially confident and independent. Fizz's flagship product – a pioneering credit-

building debit card that helps students building their credit history, even if they lack a pre-existing credit score – is marketed throughout the United States on college campuses under the mark FIZZ™ and is used by tens of thousands of college students at over 300 universities in nearly every state across the country.

8. Fizz has continuously promoted its FIZZ™ student debit card that builds credit, as well as related financial services through a mobile application for account management, credit tracking and financial literacy, with the goal of assisting students during college and as they transition from college to the "real world." Plaintiff's website, operational since August 2021, is located at http://joinfizz.com. **See Exhibit A.**

9. Fizz's plans under its FIZZ™ mark have been consistently and continuously developed since inception of the company in 2021.  On July 23, 2021, Plaintiff secured the domain: http://joinfizz.com. In August 2021, Fizz's website went live; and on December 2, 2021, Fizz filed its intent-to-use trademark application for its FIZZ™ mark in the United States Patent and Trademark Office ("USPTO"), which was accorded U.S. Application Serial No. 97/153,503, for: "Magnetically encoded debit cards and credit cards; Recorded and downloadable computer programs for use as a digital wallet, for accessing, monitoring and managing checking accounts, credit card accounts and savings accounts, for paying bills, for making electronic fund transfers, for conducting financial transactions, for transferring money, for managing finances, for communicating with other users, for searching for, identifying, obtaining, managing and redeeming loyalty reward and discount offers and for accessing resources in the fields of building credit and wealth management" (International Class 9);  "Banking services; Credit and debit card services; Loyalty program payment processing services; Bill payment services; Online banking and financial advice; Financial consultation in the field of building credit and wealth

management" (International Class 36); and "Providing temporary use of non-downloadable computer programs for use as a digital wallet, for accessing, monitoring and managing checking accounts, credit card accounts and savings accounts, for paying bills, for making electronic fund transfers, for conducting financial transactions, for transferring money, for managing finances, for communicating with other users, for searching, identifying and redeeming loyalty reward offers, for searching for, identifying, obtaining, managing and redeeming loyalty reward and discount offers and for accessing resources in the fields of building credit and wealth management" (International Class 42)  (collectively, the "FIZZ™ Services.")

10. Fizz began boots-on-the-ground marketing on college campuses in April 2022. The FIZZ™ app launched in September 2022. Since the aforementioned dates, Plaintiff's FIZZ™ debit card and financial literacy mobile app services have been marketed by student ambassadors on college campuses. FIZZ™ is offered nationwide, on virtually every major college campus in the United States, including college campuses in this judicial district. FIZZ™ rewards feature cashback rewards from established online merchants, as well as local campus vendors. Fizz has also directly partnered with dozens of the most prestigious public and private universities across the U.S.

11. Fizz has built a robust and regulatorily compliant business focusing on empowering students with financial literacy. Fizz's flagship product, its zero-interest, zero-fee debit card that helps students build credit, was developed in partnership with several FDIC-insured banking partners holding national banking charters. Fizz has an established network partnership with Mastercard, as well as two of the three large consumer reporting agencies, Equifax and Transunion.

12. The FIZZ ™ debit card is provided to every Fizz customer, and is also available for mobile payment through options such as Apple Pay. The FIZZ™ mark is prominently displayed on the front of the card, available to both customer and merchant at point of purchase.



13. To further develop recognition of the FIZZ™ brand, the FIZZ™ card and mobile app are backed by an extensive national advertising campaign and are promoted and featured on various social media sites, including TikTok, Instagram, YouTube, and *X* formerly known as Twitter, as well as through traditional media, through both paid partnerships and organic and unsolicited media coverage.

14. Indeed, since its launch, Fizz has built its brand with over 100k followers across various social media channels, including a TikTok channel with more than 17 million views.

15. Further establishing recognition among the college community, in an effort to further advance its mission of creating financial literacy among college students, Fizz has sponsored numerous college scholarships that were syndicated to college students nationwide.

16. Based on the excellence of its product and services, Plaintiff's FIZZ™ product and service was rated "Best Credit Builder Loan for College Students" two years in a row by *Business Insider* and "Best Debit Card for College Students" by Finder.com. The FIZZ™ app

5

achieved a 4.5 star rating out of 5 in the Apple App Store, and a 4.6 star rating out of 5 on Trustpilot.

17. Plaintiff's FIZZ™ product has expanded to a FIZZ™ *PREMIUM* service, with added features such as custom budgeting, personalized financial coaching, smart spend recommendations, and additional rewards.

18. As a result of Plaintiff's ongoing use of its FIZZ™ widely, as well as its substantial marketing and advertising efforts, Plaintiff has established enormous and tangible goodwill in the FIZZ ™ mark in the marketplace.

## DEFENDANT CHANGES ITS NAME FROM BUZZ TO FIZZ

19. On information and belief, Defendant started its anonymous social media platform at Stanford University, under the name Buzz Media Corp., with the adoption of a BUZZ mark for its services that were used in conjunction with a buzzing bee logo device.

20. The buzzing bee logo remains today; however, on information and belief, Defendant decided to change its company name and primary mark from BUZZ to "Fizz" to avoid an issue of trademark infringement through Defendant's continued use of "Buzz." Attached hereto as **Exhibit B**, is an article from *The Stanford Daily* from January 23, 2022, in which the Defendant's change from "Buzz" to "Fizz" is explained.

21. Notwithstanding Plaintiff's prior adoption and senior rights in the FIZZ™ mark for services directly and exclusively offered to college students, and notwithstanding Plaintiff's priority trademark application filing, on December 16, 2021, two weeks after Fizz's filing of its intent-to-use application for FIZZ, Defendant, still operating as Buzz Media Corp., filed an intent to use application for a FIZZ mark under U.S. Application Serial No. 97/175,611 for "Downloadable mobile application software for social media and social networking purposes"

(International Class 9); "Providing a website featuring non-downloadable software for social media and social networking purposes; providing a web site featuring temporary use of non-downloadable software for social networking" (International Class 42); and "online social networking services" (International Class 45).

22. On information and belief, with knowledge of Fizz's prior rights, Defendant changed its corporate name to Fizz Social App, and acquired a fizzsocial.app domain.

23. On January 27, 2022, Defendant announced to the Stanford University community (the only place where its BUZZ social app platform was available at that time) that it had formally changed its name from BUZZ to "Fizz." A true and correct download of Defendant's website announcement from January 27, 2022, available on the Internet Archive, is attached as **Exhibit C**.

### DEFENDANT'S SUBSEQUENT USE OF FIZZ OUTSIDE OF THE STANFORD UNIVERSITY CAMPUS

24. Well after Fizz's adoption of FIZZ™, and with actual knowledge of Plaintiff's prior rights, FSC, backed by a number of venture capital firms, embarked on a campaign to use an identical FIZZ mark nationally, to be marketed exclusively to college students – the *identical* population targeted by Plaintiff. The manner of marketing was also identical – through student ambassadors on college campuses.

25. FSC's FIZZ social media app allows college students to post discussion topics and news, as well as message other users directly, post polls and images, and post or comment on others' posts, in an online community specific to a particular college or university. Users post and comment anonymously. The FSC app requires users to register using a valid university email address, however the school has no control or involvement in FSC's app.

**DEFENDANT'S USE OF FIZZ**
**LEADS TO MARKETPLACE CONFUSION**

26. Understandably, although FSC's services were different from Fizz's services, FSC's adoption of an identical mark, offered to an identical population of consumers, has led to widespread actual confusion in the marketplace, on and off college campuses, damaging the goodwill engendered by Fizz in its FIZZ™ mark.

27. The anonymous nature of FSC's social app, as well as lack of moderation on FSC's platform, led to multiple complaints on college campuses where students anonymously engaged in anti-social behavior, and, disturbingly, threatened harm to themselves and others. Because Defendant adopted an identical mark to Fizz, and because Defendant offered its services to an identical consumer population, Fizz, rather than FSC, began to receive complaints about *its* "social media app" service – complaints intended for FSC. Certain troubling examples include: a university representative mistakenly reached out to Fizz to ask for the identity of certain anonymous users – on Defendant's site – not Fizz's site, to combat campus harassment; Fizz received a subpoena from a police department, responding to an online threat from FSC's platform; Fizz received a complaint from a parent whose college-aged child had tragically taken his own life because of unmonitored bullying on the Defendant's platform. Moreover, Fizz has received multiple complaints from customers, intended for Defendant's app.

28. Existing and potential university and commercial partners have questioned or expressed their concerns to Fizz regarding Fizz's affiliation with Defendant's social media app, and, in one instance, prohibited Fizz from advertising its established services on campus out of concerns that the student body at that school would confuse Fizz with the Defendant. The notoriety of FSC's social media app, and Defendant's adoption of the identical mark has caused and will continue to cause damage to Fizz.

## DEFENDANT DELIBERATELY IGNORES
## AND EMBRACES MARKETPLACE CONFUSION

29. Fizz's requests to FSC to change its mark not only have been ignored, but appear to be part of FSC's marketing playbook on expanding its future services, by creating further marketplace confusion among Fizz's college student customers. Defendant proudly insists on its website that it is unregulated by universities, leading the brunt of complaints against it to be sent to Fizz, which has cultivated relationships with universities.

30. Indeed, on January 11, 2024, more than three years after Plaintiff's FIZZ application launched and well after Plaintiff began using FIZZ™ for its credit-building debit card and related services, FSC filed a *second* intent to use trademark application covering services expanding far beyond an anonymous social media platform, under Application Ser. No. 98/353,568 for "Downloadable software for private virtual communities; Downloadable software for creating profiles containing names, organization information, biographical information, links to websites and images; Downloadable software for accessing and participating in private online communities in which registered users can post and review information, data, audiovisual materials photos and messages provided by other registered users; Downloadable software for classified listings; Downloadable software for conducing polls and surveys; Downloadable software for providing and reviewing news; Downloadable software for providing and reviewing job or employment opportunities; Downloadable software for listing and viewing events, managing events, event ticketing, event reservations, and event attendance" (International Class 9); "Providing an on-line searchable database featuring classified ad listings and employment opportunities; Providing online marketplaces for sellers of goods and/or services; Identification verification services, namely, confirming authenticity of sellers of online products and services for the purposes of helping consumers make informed purchasing decisions" (International Class

9

35) and "Hosting private virtual communities; Providing electronic verification services of on-line listings" (International Class 42). These services even more closely align with the services currently offered by Fizz under its FIZZ™ mark and are intended to further trade off Fizz's brand and image.

31. Left with no alternative, Plaintiff sent a cease and desist letter to Defendant on May 10, 2024. A copy of Plaintiff's letter is attached as **Exhibit D**. Defendant has continued to ignore Fizz's demand that Defendant change its trademark to a non-infringing mark. Defendant's continued and expanded use of the infringing FIZZ mark is positioned not only to trade off the extensive good will developed by Fizz, but to deliberately damage it.

## COUNT I

### COMMON LAW TRADEMARK INFRINGEMENT UNDER 15 U.S.C. § 1125(a)

32. Plaintiff incorporates Paragraphs 1-31 by reference as if fully incorporated herein.

33. This is a cause of action for common law federal trademark infringement arising under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

34. Plaintiff's FIZZ™ mark is a valid mark owned by Plaintiff, used by Plaintiff nationwide since 2022, and is the subject of an intent-to-use application filed in the United States Patent and Trademark Office on December 2, 2021. Once Fizz's application issues to registration, Fizz will be accorded a priority first use date of use in interstate commerce of the application filing date, December 2, 2021. Plaintiff filed its statement of use in support of its intent-to-use trademark application on May 8, 2024, claiming a first use in commerce date of September 18, 2022, for all three classes covered in the application.

35. Defendant's use of the identical trademark "Fizz" as alleged herein is likely to deceive and has deceived consumers as to the origin, source, sponsorship and affiliation of Defendant's services, and is likely to and has caused consumers to believe, contrary to fact, that Defendant's services are sold, authorized, endorsed and/or sponsored by Fizz, or that Defendant is in some way affiliated with or sponsored by Fizz.

36. Upon information and belief, Defendant's conduct as alleged herein is willful and is intended to, does, and is likely to cause confusion, mistake, or deception as to the affiliation, connection, or association of Defendant with Plaintiff.

37. Defendant's conduct as alleged herein constitutes trademark infringement and unfair competition in violation of Section 43(a) of the Lanham Act, 15 U.S.C. §1125(a).

38. Unless enjoined by the Court, Defendant will continue to use the infringing mark, causing irreparable injury to Plaintiff, for which it has no adequate remedy at law.

39. As a result of Defendant's acts alleged as above, Plaintiff has incurred damages in an amount to be proven at trial.

## COUNT II

## COMMON LAW UNFAIR COMPETITION

40. Plaintiff incorporates Paragraphs 1-39 by reference as if fully incorporated herein.

41. Defendant's marketing and sale of services offered to and through college students under a mark identical to Plaintiff's FIZZ™ mark is likely to cause confusion, mistake, or deception as to Defendant's affiliation, connection, or association with Plaintiff, or as to the origin, sponsorship, or approval of Defendant's products and commercial activities.

42. Defendant's actions alleged herein constitute unfair competition in violation of the common law of Pennsylvania.

43. Defendant's unfair competition has caused and will continue to cause damage to Plaintiff, and is causing irreparable harm to Plaintiff for which there is no adequate remedy at law.

44. As a result of Defendant's acts alleged as above, Plaintiff has incurred damages in an amount to be proven at trial.

## COUNT III

## UNJUST ENRICHMENT

45. Plaintiff incorporates Paragraphs 1- 44 by reference as if fully incorporated herein.

46. This cause of action arises under the common law.

47. By the acts and activities complained of herein, Defendant has been unjustly enriched.

48. Principles of equity require that Defendant disgorge the value of the benefit conferred upon it through its infringing adoption and use of the identical mark FIZZ, and pay Fizz the value of the benefit conferred.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiff respectfully requests the Court enter an Order and Judgment granting it the following relief:

1. Permanently enjoining the Defendant and each of its agents, employees, officers, attorneys, successors, assigns, affiliates, and any persons in privity or active concert or participation with any of them from:

    a. Using the FIZZ mark or any mark containing the term FIZZ for a social media platform, a financial services platform, an employment platform, or for any other goods or services directed to college students; and

    b. using any trademark that imitates or is confusingly similar to or in any way similar to Plaintiff's trademark FIZZ, or that is likely to cause confusion, mistake, deception, or public misunderstanding as to the origin of Plaintiff's products or their connectedness to Defendant;

2. Requiring Defendant to file with the Court and serve on Plaintiff within thirty (30) days of entry of the injunction, a report in writing under oath setting forth in detail the manner and form in which Defendant has complied with the injunction, pursuant to 15 U.S.C. § 1116(a);

3. Holding Defendant liable, pursuant to 15 U.S.C. § 1117, for all damages suffered by Plaintiff resulting from the acts alleged herein;

4. Compelling Defendant, pursuant to 15 U.S.C. § 1117, to account to Plaintiff for any and all profits derived by it from its illegal acts complained of herein;

5. Ordering Defendant, pursuant to 15 U.S.C. § 1118, to deliver up for destruction all containers, labels, signs, prints, packages, wrappers, receptacles, advertising, promotional material or the like in possession, custody, or under the control of Defendant bearing the FIZZ mark; as well as all plates, matrices, molds, dies, masters, or other means of making the same;

6. Ordering Defendant to account to Plaintiff for, and disgorge to Plaintiff, all profits it has derived as a result of the unlawful acts complained of above;

7. Declaring this to be an exceptional case and awarding Plaintiff its full costs and reasonable attorneys' fees pursuant to 15 U.S.C. § 1117;

8. Awarding Plaintiff such other relief that the Court deems just and proposed under the circumstances.


Dated: June 7, 2024

*/s/ Jacqueline M. Lesser*

Jacqueline M. Lesser (PA No. 204622)
Lesley McCall Grossberg (PA No. 208608)
**ICE MILLER LLP**
1735 Market St., Suite 3900
Philadelphia, PA  19103
Telephone:   215.982.5165
Fascimile:    215.377.5029
jacqueline.lesser@icemiller.com
lesley.grossberg@icemiller.com

*Counsel for Plaintiff*
*ShoulderTap Technologies, Inc. d/b/a Fizz*

## **JURY DEMAND**

Plaintiff demands a trial by jury on all issues so triable.

                                           */s/ Jacqueline M. Lesser*
                                           Jacqueline M. Lesser (PA No. 204622)